All rise. Please be seated. The next case for oral argument is People v. Lackey. Counsel? May it please the Court, Counsel? Thank you. My name is Jennifer Lackey with the Office of the State Appellate Defender, and I represent the defendant appellant, Mr. George Lackey. I would like to focus on the first issue unless your honors have questions about the second one. Mr. Lackey was denied his Sixth Amendment right to present a defense where he was barred from presenting any evidence that the Secretary of State affirmatively led him to believe he could legally drive. Generally, evidentiary rulings are subject to an abuse of discretion review. However, whether Mr. Lackey's constitutional rights were violated is subject to de novo review. The Sixth Amendment guarantees defendants the right to present a defense. This means a meaningful opportunity to present a complete defense and present the defendant's version of the facts. This includes the right to show facts which negate the guilt of the accused. A defendant is denied his right to present a defense where a crucial part of his case is excluded, and that is precisely what happened in Mr. Lackey's case. The exclusion was his defense of ignorance and mistake? What was being excluded? What was specifically? The State filed 10 pretrial motions excluding any evidence of the correspondence from the Secretary of State, any evidence regarding the BAIID permit, his payments, his monthly payments of $70 for that permit. I understand that, but the defense that he was being denied was the ignorance or mistake defense? In addition to an entrapment defense. Entrapment. If I stop. Okay. But the ignorance or mistake for a guy who's driving while license revoked, he has a BAIID, that's what it's called, BAID. He pays for the BAIID, he takes his money, and you're still claiming that, or let me say it this way, are you claiming that because the State accepted his money that somehow he was led to believe, not just the letters, I mean, the letters there's a lot of confusion, but if the State takes your money for the device, are you claiming that that somehow leads him to believe he could drive? So that alone may be not, but Mr. Lackey's position is that that's a question for the trier of fact, and Mr. Lackey wasn't even allowed to get any of this information to the trier of fact. But don't we have to determine that first as a matter of law whether it would rise to the level of the defense? I do believe the trial court would be required to determine whether there was sufficient evidence for him to present this as an affirmative defense, and I believe the record is clear that there is sufficient evidence that he was entitled to present this as an affirmative defense. But why? There are numerous letters, so the money and the payments alone may be not, but in combination with all the letters from the Secretary of State and a Secretary of State official interpreting one of them to say that Mr. Lackey could drive, I believe that is sufficient evidence that demonstrates that Mr. Lackey was entitled to present this as an affirmative defense. So you think the letters are key? I do believe the letters are key. The letters in combination with the offer of proof presented at trial, because again, if your honors recall, Mr. Lackey was not allowed to present this evidence at trial. It was completely omitted from the judge's consideration in determining Mr. Lackey's guilt or innocence. But at trial, trial counsel made an offer of proof, and Patrick Dieters, a Secretary of State official, read the July 2011 letter, a letter that was sent to Mr. Lackey just before the accident which led to this offense occurred. Mr. Dieters, a Secretary of State official with 15 years at the Secretary of State's office, read that July 2011 letter and said that upon reading it, he would assume that Mr. Lackey could drive if he was complying with the BAID permit requirements. I think all of that in combination shows that Mr. Lackey presented sufficient evidence to demonstrate he was entitled to present these defenses. You talked about sufficient evidence, but isn't this a strict statute? I mean, how is his mental state an issue? So this is a strict liability statute, and generally with a strict liability offense, lack of one's intent cannot negate an element. However, this is distinct here. We are talking about due process principles which prohibit the state telling a person they can do something and then prosecuting them for doing that action. And I think that's where this affirmative defense statute as well as this entrapment by estoppel defense come into play. These are simple due process principles of fairness, and it's comparable to a case with... Entrapment, though, doesn't have to be some sort of intent. Well, with entrapment by estoppel, there are three elements. A government official with actual or apparent authority must affirmatively assure a defendant that certain conduct is legal, and the defendant must actually and reasonably rely on that government official. But the affirmatively assure them as opposed to a letter that's a form letter that's mistakenly sent out, you think those are equivalent here? So the state does characterize this as a form letter. However, we would strongly disagree with that characterization. These were letters tailored to Mr. Lackey's personal blood alcohol content. Letters that told Mr. Lackey to take his vehicle in to be serviced and that he had 10 days to comply. Letters that demanded Mr. Lackey explain not why he was driving the vehicle, but why he had started his vehicle with a certain amount of blood, with alcohol in his blood. So the state was inducing him to pay $70 a month from 2009 to 2011. It was demanding explanations about him when he started his vehicle with, well, under the legal limit, but over .025. But doesn't that mean he also had to ignore the letters and the requests, the letters saying that his temporary license had expired and that his license had been revoked and that none of this applied to someone who no longer had a valid license? Does that make it reasonable? Well, and that's again a question that Mr. Lackey wanted the trier of fact to get to answer in light of all of the evidence, but he was prevented from showing all of this evidence to the trier of fact and letting them decide whether he was reasonable. I think good evidence that his interpretation that he could drive was reasonable was Secretary of State Official Dieter's interpretation of the letters. He too found that the July 2011 letter indicated Mr. Lackey could drive. And I think that's a very good indication of whether that's a reasonable interpretation or not. But again, we are not arguing that no rational trier of fact would find Mr. Lackey guilty. That's the reasonable doubt standard. We're just saying let a litigant have a chance to litigate. Mr. Lackey just deserved his day in court and he was deprived of that. Mr. Lackey isn't saying that his affirmative defense would have been successful. He's just asking for the chance to present a defense. And that's the question that he has brought to this court. So we do believe that entrapment by estoppel was an applicable and relevant defense. It should have been available to Mr. Lackey. Again, it's got three elements that a government official with actual authority tells someone that their conduct is legal. Here we've got the Secretary of State, the department in charge of issuing and canceling one's driving privileges. David Fuchs at a crime trial hearing, he's the Baid acting administrator and he says his office is in charge of the issuance and cancellation of those Baid permits. So we've definitely got the right government official with actual authority. Next, the question is whether they affirmatively assured Mr. Lackey that his conduct was legal. And our stance is that they did. All of these letters in combination could lead a reasonable person to believe that he could drive. And Mr. Lackey, the third element, it's obvious that he did rely on it because he paid $70 a month from 2009 until July 2011 when this accident occurred. So his actual reliance occurred. And we believe his reliance was reasonable. As I said, Patrick Dieters, the Secretary of State official with 15 years experience, reads this July 2011 letter that comes out just days before this accident, which I'm sure the court remembers was an accident that Mr. Lackey did not cause. He had a green light and a driver ran a red light and slammed into him. But Patrick Dieters reads this letter and he interprets it to indicate that Mr. Lackey can legally drive as long as he's complying with these Baid permit requirements. So again, these are simple due process principles. And do Your Honors have any questions? Thank you, Your Honors. Counsel? Thank you, Your Honors. Good afternoon. My name is Allison Page Brooks and I'm appearing on behalf of the people, the appeals court and counsel. First of all, one of the most important facts is that, well, the issue is whether the defendant's reliance, what he claims, on these materials received from the Secretary of State was reasonable. That's one of the central issues. And one of the most important issues is whether he could reasonably rely on a monitoring device permit. It wasn't the Baid monitoring that gave him the right to drive during statutory summary suspension. It was the monitoring device permit, which required active Baid monitoring in compliance with the Baid program. So it was the permit, not the Baid monitoring, that gave him that authority during the statutory summary suspension. Of course, that became invalid because he pleaded guilty. I think it was guilty plea to DUI in October of 2009. And a week later, when the Secretary of State got notice of that, they veiled a notice of revocation to him to take effect on the 22nd of October. And that notice required him to surrender all license and permits, which includes the MDDP, which would have given him the right to continue driving during the statutory summary suspension. That becomes invalid. That's clear because the permit itself cites a regulation. The regulation at the time that I went through, the only register to find the actual regulations that were in effect back in 2009 and 2011. And so the MDDP shall be invalid and must be surrendered if driving privileges subsequently are revoked during the permit's issuance period. And, of course, in 2011, shortly before the accident, they also added it includes conviction and revocation for the DUI arrest that resulted in the MDDP. So it's clear that he cannot drive after his license is revoked. A guilty plea or DUI conviction is a mandatory revocation offense. Okay, we agree with you. So now, the question, what about all these letters? Right. So what he's supposed to do is he's supposed to deinstall his bay. He's supposed to surrender. Deinstall, did you say? Yeah, because he has to go through an installer. And the reason why he gets the letter is because he doesn't deinstall the bay. That's his first mistake. That's his mistake. The installer then realizes that he hasn't come in for timely monitoring. Then they send notice to the Secretary of State that he hasn't come in for his monitoring. Because as far as the installer knows, he still has a valid MDDP. So it's the right hand not knowing what the left hand does, unfortunately. Right. So essentially at that time, the State should have sent a notice to the installer saying he doesn't have a license. At which point the State should have also notified the defendant again that you haven't. I mean, obviously the State knew at that point from the installer that the defendant still had the device. Yes. And instead of saying something like he doesn't have a license, instead we have a series of letters and communications where he's allowed to continue to have the device. Right. But he still doesn't have a permit that's been revoked and he's been notified of that. The MDDP is invalid because he has a revoked license and he's notified. Notified. That's the question. Does he know that? Yes. And one of the testimonies was that there was nothing in the Bay Administrator's file that notice was sent. That doesn't matter. He doesn't get specific notice his MDDP was revoked. He didn't notice that his driving privilege was revoked and that specifically said he had to surrender all permits. So he did, in fact, get notice that his permit was essentially invalid. Can I ask you, the VA, what do we call it, BAID? Just BAID. Okay. That is, I guess, they contract or something with the state. Is that like a private company? It's not a state organization, right? Right. I'm not sure what fees go to the Secretary of State, but he's paying a private company. There's a private company that installs these monitors, right? They might be licensed by the Secretary of State to participate in it. Okay, have some kind of regulation or something, but they are not an arm of the Secretary of State. Right. No, but they communicate with the Secretary. No question. But I just wanted to clarify that. So he's getting his directives regarding whether or not he can actually drive, forget about the BAID, from the Secretary of State, and that was a notification once he was convicted of his DUI that he had to return his license. All permits. He was also separately notified that his registrations were being suspended and his license papers were being suspended and he had to get proof of financial responsibility, which he did. So he got that notice as well, and the basis for that suspension was his revocation of his license, and it said so. That's the only reason that you would have to do that. To get an SR-22. So when they accepted the SR-22, the defense argument here is that the letter said that he could drive. Well, part of it said if that's your only outstanding problem is the proof of financial responsibility. You had no insurance. Right. But SR-22 also said that he must seek reinstatement if his license is revoked. And the notice of revocation also told him that he had to specifically, he was warned not to drive unless notified that driving privileges has been reinstated. And there's nothing in these BAID letters that says that his driving privileges were reinstated. And we need as a Secretary of State employee to look at only the letter and nothing else. So in other words, the Secretary of State employee doesn't know that the monitoring permit itself had a listed expiration date of January 28, 2010, which was almost a year and a half before the accident. So how could anyone reasonably rely on that? And they said, well, of course, it's possible for this to be extended automatically if there's a violation. But if there was a violation, the defendant would have gotten notice that there was a violation and that his requirement to do BAID monitoring was extended. So that was all theoretical. Right. It was hypothetical because it could have been extended, perhaps, if he had a violation, but he never had any violations. He finally gets a notice of potential violations. But still, extension is not automatic. They give him an opportunity to then explain these violations before they could, in their discretion, extend BAID monitoring. But they don't do that. But that still doesn't get him any new permit. Right. So essentially, he can't reasonably rely on the monitoring permit that's expired a year and a half before the accident. And also, he can't reasonably rely on letters that he received in February 2010 and July 2011 to continue BAID monitoring after revocation in October. Because those letters weren't even sent yet. They weren't even sent until February 2010. So he's supposedly relying on the SR-22 that says he can legally drive. But it also specifically says if his license is revoked, of which he got notice of that, that he must seek reinstatement. And he never got notice of reinstatement. So he was an SR-20. You're throwing around these terms. I'm sorry. SR-22 is proof of financial responsibility. It's the IRS insurance where people revoke DUI. And that does not allow him to drive. It allows him to maintain his license registrations in his place that are in his name. But he cannot drive without having his license reinstated. And that could be, I mean, you could even have a valid driver's license. It's just showing that you have no insurance and you shouldn't be driving, period. There are other reasons for a person to have an SR-22 and proof of financial responsibility, like if you get in an accident that's uninsured, for example. But this was because he was subject to mandatory revocation. And so his defense of entrapment by estoppel is actually more like an official authorization defense. It's not a typical entrapment defense. But even then, the statute in which he relies only applies to mistakes of law, not mistakes of fact. So if he's complaining about a mistake of fact, there's no mental state here to be mistaken about. It's a strict liability offense. So he does not come up in the strict terms of Section 4-8 before, because there's no official interpretation of the statute made here. These are just letters saying that, well, you didn't take your car in. You didn't, you know, here we detected these violations. It's the inference that he's making from the receipt of those letters. Ignoring all the other information that he's gotten from the Secretary of State about his revocation and his permit. Which is why when they ask the Secretary of State about what about this July 2011 letter, and the Secretary of State doesn't know all these other facts. They don't know his license was revoked. They don't know the date of the expiration of the monitoring permit. And so that's not a reason for him to have a valid defense. So essentially his defenses were unavailable as a matter of law. They were properly barred by the trial court. So he was not entitled to present an invalid defense that was invalid as a matter of law and have the judge rule on it at trial as a trial fact. What about entrapment by estoppel? Do you feel like that covered that? So again, an element of entrapment by estoppel is that there has to be some sort of active misleading. And this is not really active misleading. But the main point is his reliance has to be reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation. And it throws around, the defense brief throws around the word affirmatively a lot. There's nothing really affirmative about this. He was never affirmatively told you may legally drive, your MDP is still valid even though it expired. A year and a half ago. He was never given that affirmative guidance from the Secretary of State. Why isn't that a determination by the trial judge in determining in the mass of all of this, the mass of the confusion and contrary occurrence of the letters from the Secretary of State and actions taken to try to comply with that, why isn't that a question for the trial judge as to whether they've reached that goal? Because it seems to me offhand, the position you're taking makes impossible any kind of entrapment by estoppel defense. May I ask you to answer your question, Your Honor? Yes, sure, of course. I would say they did present this at a motion in the May hearing, and the judges entitled to look at what the defendant is offering as potential defense and then rule as a matter of law that is completely insufficient to constitute a potential defense to the charge by bar it from being presented at the trial, so that's my answer. So you're basically saying that he had his hearing? No, what I'm saying is if he had an actual potential defense that would merit being offered at trial What I'm asking is, your position, if I'm stating it correctly, is in that motion in Lemony and the arguments made there too, that he actually had a hearing as to his defense? Some sort of hearing, yes. Thank you, Your Honors. Counsel? Your Honors, if the trial court's rulings are upheld, we are essentially saying that Mr. Lackey was convicted the moment the cop finished writing the ticket. First, I want to point out that some of the state's argument was relying on facts that are not in the record, for example, we do not know that Mr. Lackey was sent these letters from the Bay Division of the Secretary of State because of his failure to take the device out of his vehicle. In fact, Mr. Fuchs at the pre-trial hearing said he could not explain why these letters were sent. So the record is unclear as to why these letters came out. But wasn't he required, you said something about from the moment the ticket was written. It's not when the ticket was written, it was when he pled guilty. He was convicted? He pled guilty to the underlying DUI. Because of his prior record, he wasn't going to drive. Well, I'm not sure I understand. My point is that this is a strict liability offense because of the nature of the offense itself. So in a strict liability offense, I don't see how he gets this defense. That's your argument. I see, okay. That's the whole point of strict liability offenses. Right, and I think a good example is to compare DUI cases where those are two strict liability cases. However, in those instances, people charged with DUI are permitted to allege a defense of necessity that they needed to drive and that the harm that would have resulted would have been greater had they not driven. And I think that's because the law understands that there are defendants who may commit a strict liability offense who are less culpable than others. And that is where, you know, I think entrapment by estoppel is perhaps the better fit here. But it is the due process principles at play that make it clear that we can't let the state say, yes, you can do something. Folks, we were wrong. It's a strict liability offense, so you're out of luck. And my comment regarding the, he was convicted the moment the cop finished writing the ticket, that's in reference to the driving with a revoked license ticket. If he writes the revoked license ticket and then we tie the defendant's hands and say, no, you can't present any of this evidence from the Secretary of State, then he was essentially convicted of this driving with a revoked or suspended license the moment that that ticket was completed. And probably true if his defense was that he, if he inappropriately presents the defense of relying on these letters. That's probably true. He was convicted the minute he was. I'm sorry, I didn't hear you. It's probably true he was convicted the minute the ticket was written if the defense is not allowed. Right, right. And that's exactly what happened here. There were ten pretrial motions that were keeping this Secretary of State correspondence from coming in in any manner. And I want to point out that much of the state's argument here is about whether Mr. Lackey's actions in reliance on these letters were reasonable or not. And again, we're not asking this court to make that ultimate question of whether this is, whether, you know, he is innocent in light of this affirmative defense. We're saying let Mr. Lackey have a chance to present this defense instead of issuing him the ticket and then tying his hands and convicting him without letting any of this come out. So again, what would have been the either actual or apparent authority of somebody from the Secretary of State that said he could drive? So I, the Secretary of State is the state agency in charge of issuing and cancelling driving privileges. And then we've got Pink's testifying, his office is in charge of the issuance and cancellation of those baid permits. While Mr. Lackey testified that he never knew he could not drive until after this July 2011 accident occurred. But that's not somebody giving him actual or apparent authority. Right. So Mr. Lackey's argument here is that these letters from the Secretary of State led him to believe he could drive. And that is because the language of the letters so the, at trial I think the state introduced the notice, the affidavit of Melling and it was dated October 15th. And that was when Mr. Lackey was allegedly informed that his drivers, that his driving privileges were revoked. However, after that this SR-22 form, oh may I finish? Yeah, go ahead. Sorry. This came on October 22nd, it was dated October 22nd and the language contemporaneously says that driving privileges were revoked. But at the same time it states that if your license is still valid, you may continue to drive. And again, the circuit clerk gave Mr. Lackey his license back even though it was mandated by statute to send that license to the Secretary of State. And that license had a valid date. Okay, thank you. Thank you, Your Honors. Mr. Lackey. Thank you. We appreciate the briefs and arguments of counsel to take this case under advisement. Thank you.